[Doc. No. 13]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KENNETH DORNEY,<br><br>                    Plaintiff,<br><br>         v.<br><br>DOMINIC MAMMI, et al.,<br><br>                    Defendants. | Civil No. 06-4695(NLH) |

**OPINION**

This matter arises out of an accident that occurred on October 24, 2004 on defendants' property in West Virginia. On that date plaintiff was helping defendant Dominic Mammi cut a tree branch when he fell off a ladder and suffered serious injuries. At the conclusion of discovery defendants filed their motion for summary judgement [Doc. No. 13] which plaintiff opposed. [Doc. No. 14]. The Court recently held oral argument. The Court has considered all of the parties' written and oral arguments and rules that defendants' motion will be GRANTED.[1]

**Factual Background**

The only evidence relevant to defendants' motion is the deposition testimony of plaintiff and Dominic Mammi ("defendant"). Plaintiff's version of his accident is straightforward. Plaintiff was a longtime friend of defendant and spent five days visiting him in West Virginia in October 2004. At the time of his accident plaintiff was 50 and defendant was 71. Dominic Mammi Deposition

---
1. Pursuant to 28 U.S.C. §636(c) the parties consented to the jurisdiction of this Court to decide this motion.

Transcript ("Deft. Dep. Tr.") at 6:15-16.  During the visit defendant asked plaintiff several times about cutting down some branches on a tree on his property but plaintiff "tried to put it off."  Dorney Deposition Transcript ("Pltf. Dep. Tr.") at 32:2. However, "right before, prior to when ... [he was] getting ready to leave" plaintiff said "okay, I'll cut this branch down ...." Id. at 32:7-8.  According to plaintiff, defendant told him he was "too shaky to go up the ladder" and asked him "to do it."  Id. at 32:20-33:1.  Thereafter plaintiff and defendant went into a garage and retrieved a generator because plaintiff was going to use an electric chainsaw.  Id. at 34:2-4.  Defendant then retrieved a double extended aluminum ladder laying alongside the garage and brought it over to the tree to be cut.  Id. at 34:4-6; 35:6-7. Defendant extended the ladder "all the way up the tree" and showed plaintiff what branch to cut.  Id. at 34:20-21; 35:12-14. Defendant leaned the ladder against the tree in a locked position. Id. at 35:23-36:8.  Because plaintiff did not want to carry the chainsaw while he climbed the ladder, he tied a piece of rope to the chainsaw and after he climbed up the ladder he pulled the chainsaw up on the rope.  Id. at 34:23-35:3.  As plaintiff was climbing the ladder he asked defendant to hold onto the bottom. Id. at 38:9-10.  Plaintiff does not know if defendant followed his instructions because, "you know, he's down here I'm up there." Id. at 38:12-15.  When plaintiff was within a "couple rungs of the top of the ladder" he attempted to cut a branch at "eye level."  Id. at 38:16-39:5.  Plaintiff estimates that at that time he was halfway

2

up the tree or 25 feet off the ground. Id. at 42:9-15. In order to cut the branch plaintiff "first slung the chainsaw over the branch" he was going to cut because he did not want to drop it. Id. at 43:11-21. Plaintiff than started the chainsaw and was holding onto the ladder with his left hand and cutting the branch with his right hand. Id. at 43:22-44:6; 45:2-5. Prior to the accident plaintiff had never used an electric chainsaw. Id. at 40: 14-16. The tree in question was about "50 feet, 40 feet" high. Id. at 41:14-16.

Plaintiff's exact version of how his accident happened is as follows:

> As I'm cutting the branch, I'm standing on the ladder. And the ladder twisted, like I felt a twist. And I was still cutting the branch, it was almost cut through. And the ladder twisted, it threw me off of it, I fell down below Dominic.

Id. at 45:9-13. Plaintiff also explained that "the ladder twisted towards the left and in turn, threw ... [him] to the left." Id. at 46:12-13. This all occurred in "split seconds." Id. at 47:17. Plaintiff was looking at the branch when the ladder twisted. Id. at 47:18-20. Plaintiff does not know if defendant was holding the ladder when he fell. Id. at 48:13-16. Plaintiff has not identified any defect in the ladder. Id. at 114:17-23.

Defendant's version of plaintiff's accident is similar to plaintiff's testimony but not identical in all respects. Nonetheless, the differences are immaterial in the context of defendant's motion. Defendant claims plaintiff volunteered to cut his tree. Deft. Dep. Tr. 11:19-23. According to defendant plaintiff used a 32 foot extension ladder. Id. at 11:8-10. The

3

branch plaintiff cut was 18 to 20 feet high. Id. at 14:13-16. Like plaintiff, defendant testified there were no problems with the ladder or chainsaw.[2] Id. at 15:22-24; 25:16-18. According to plaintiff defendant never asked for any safety equipment before he attempted to cut down the branches. Id. at 34:24-35:2. Defendant claims he and plaintiff extended the ladder 24 feet and that both leaned it against the tree. Id. at 16:10-14; 18:5-18. The base of the ladder was 6-7 feet from the trunk of the tree. Id. at 22:19-21. The ladder was leaning on the branch to be cut (id. at 16:19-24) because plaintiff was not going to cut the branch off the tree but was only going to trim the "branch off about six foot away from the tree." Id. at 16:25-17:9. Defendant's exact version of what happened is as follows:

> He [plaintiff] undercut it from the bottom a little bit, then he started cutting from the top. When he cut it from the top, the far end of the branch, which was 25 feet out or so, hit the ground, and it just whipped the stump part back that hit the ladder, threw Kenny [plaintiff] off, and then the stump part come down, the ladder come down, and then the stump part come down and landed on me and pinned me to the ground.

Id. 21:3-11. Defendant did not see the branch hit the ladder but knows that the branch knocked the ladder over. Id. at 23:13-14, 23-24; 33:13-15. Defendant never saw the ladder twist since he was looking down to avoid getting sawdust in his eyes. Id. at 22:3-11.

According to the parties' testimony, the undisputed evidence shows that plaintiff fell off defendant's ladder while he was

---

2. Although defendant did not retain possession of the ladder after plaintiff's accident, plaintiff has not raised a spoliation argument.

4

cutting a branch off a tree while standing on an extension ladder 20-25 feet off the ground.  After plaintiff cut off a piece of a branch the branch hit the ground and then hit plaintiff's ladder.  After the branch hit plaintiff's ladder it was knocked out of defendant's hands and plaintiff fell.  Id. at 21:24-22:2.  Plaintiff does not know what happened because his accident happened in "split seconds."  Pltf. Dep. Tr. 47:17.

**Discussion**

**Choice of Law**

The first issue the Court must address is whether to apply the substantive law of West Virginia or New Jersey.  A federal court sitting in diversity applies the choice of law rules of the forum state.  Lebegern v. Forman, 339 F. Supp.2d 613, 619 (D.N.J. 2004).  New Jersey's choice of law principles apply a governmental interest analysis "which requires application of the law of the state with the greatest interest in resolving the particular issue."  Gantes v. Kason Corp., 145 N.J. 478, 484 (1996).  The first step in the analysis is to determine whether there is an actual conflict between the laws of the interested states.  Veazey v. Doremus, 103 N.J. 244, 248 (1986).  Any conflict should be analyzed on an issue by issue basis.  Id.

Under New Jersey law the duty owed by a landowner to a person on his or her property is dependant on the status of the person.  In this case plaintiff was defendant's social guest.  The applicable precedent provides that a landowner has a duty to warn a social guest about dangerous conditions the host has actual

5

knowledge of but the social guest does not know about. Tighe v. Peterson, 356 N.J.Super. 322, 325 (App. Div. 2002). "Hosts are not required to improve or alter their home in order to render it safer for a guest than for themselves." Id. at 326. New Jersey law provides that a host is under no duty to inspect his or her premises to discover defects which otherwise might not be known to the casual observer. Endre v. Arnold, 300 N.J.Super. 136, 142 (App. Div. 1997) (citations omitted). A host is not liable when a guest knows of or "by a reasonable use of his facilities would observe" a dangerous condition. Id.

In contrast, West Virginia law has abolished classifications for non-trespassers that enter onto another's property. See Mallet v. Pickens, 206 W.Va. 145, 146 (1999). Instead, under West Virginia law a landowner or possessor of land owes a non-trespassing entrant a duty of reasonable care under the circumstances. Id. "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Id. In determining whether a landowner or possessor of land has met his duty of reasonable care, the trier of fact must consider:

> (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises;

6

>                and (5) the magnitude of the burden placed
>                upon the defendant to guard against injury.

Id.

New Jersey law merely requires a possessor of land to warn social guests of the conditions about which it is aware. Tighe, 356 N.J.Super. at 325. A possessor of land is not required to inspect its premises to discover defects that would not be discovered by the casual observer. Endre, 300 N.J.Super. at 142. West Virginia law looks at the foreseeability of the injury, regardless of a non-trespassing visitor's status on the property. Mallet, 206 W.Va. at 146. Moreover, under New Jersey law a plaintiff must establish that the possessor of land had actual or constructive knowledge of a defective condition. Constructive knowledge enhances the duty owed by a possessor of land beyond what is owed to a social guest. Under West Virginia law, a possessor of land could be liable for a defect he or she should have discovered through reasonable inspection. See Hawkins, 219 W.Va. at 280. Because under the same set of facts it is possible for a defendant to be liable for a plaintiff's injuries under West Virginia law, but not be liable under New Jersey law, an actual conflict exists between New Jersey and West Virginia law.

If an actual conflict exists, "the next step [in the conflicts of law analysis] is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Veazey, 103 N.J. at 248. "If a state's contacts are not related to the policies underlying its law, then that state does

not possess an interest in having its law apply." Id. The qualitative, not quantitative, nature of the contacts determines which state's law should apply. Id.

In this case, both New Jersey and West Virginia have an interest in having their law applied. New Jersey has an interest in having its law applied in order to protect its citizens, in this case plaintiff. West Virginia has an interest in applying its law to maintain the safety of premises located within the state and to place landowners and possessors of land on notice of the duty of care they owe to persons that enter their property. Because the application of the respective laws of New Jersey and West Virginia would further the interests of both states, the Court must look at additional factors.

"Although New Jersey no longer adheres to the strict application of the *lex loci delecti* rule, 'it has recognized that the place of the injury is an important factor to consider in determining what state has the greatest interest in a case.'" Capone v. Nadig, 963 F.Supp. 409, 413 (D.N.J. 1997) (quoting Amoroso v. Burdette Tomlin Memorial Hospital, 901 F.Supp. 900, 903 (D.N.J. 1994)). The place of the injury gains more importance when, as here, the place where the injury occurred was not fortuitous. Id. Plaintiff is domiciled in New Jersey and defendant is domiciled in West Virginia. Plaintiff's injury occurred while he was visiting defendant in West Virginia. There is no question that plaintiff purposefully traveled to West Virginia and availed himself of the laws of that state. See

8

Lebegern, 339 F.Supp.2d at 621 (holding that plaintiffs who purposefully traveled to New Jersey and were injured are entitled to the protections of New Jersey law); Capone, 963 F.Supp. at 413 (citations omitted) ("[b]y entering the state . . . the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created"); Amoroso, 901 F.Supp. at 906 ("[c]itizens do not . . . carry their home state's laws with them wherever they go"). Further, as to a social guest West Virginia law imposes a greater duty on a possessor of land to safeguard his or her premises than does New Jersey law. Therefore, West Virginia law provides visitors such as plaintiff with greater assurances of a safe premises than New Jersey law. New Jersey's interest in having its law applied is met by the application of West Virginia law.

In addition, one of the purposes of tort law is deterrence, to encourage reasonable conduct and to discourage conduct that creates an unreasonable risk to others. Gantes, 145 N.J. at 489. The deterrent goal of tort law is accomplished through the imposition of liability for a breach of the duty to exercise reasonable care. Id. "The interest in deterrence has been recognized as a relevant factor to be considered in choice-of-law decisions." Id. As the situs of the incident, West Virginia has a substantial interest in encouraging reasonable conduct amongst its citizens and deterring conduct that creates an unreasonable risk to others. The application of New Jersey law will have little if any deterrent effect on the future behavior of West Virginia landowners.

9

Although New Jersey and West Virginia both have an interest in having their law applied, New Jersey's only contact with this case is that plaintiff is domiciled in the state.  The Court finds that West Virginia has a greater interest in having its law applied because it is the situs of the accident in question, it has an interest in insuring the safety of social guests in the state by encouraging reasonable conduct through its tort law, and it has an interest in putting landowners in the state on notice of the duty of care they owe non-trespassers on their property.  In addition, the application of West Virginia law furthers New Jersey's interest in protecting the safety of its citizens. Based on the forgoing analysis the Court finds that West Virginia law should apply.

**Standard of Review**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir.1988). The moving party bears the burden of proving no genuine issue of material fact is in dispute and the court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

**Negligence**

In order for plaintiff to prevail on his negligence claim he must show that defendant owed him a duty, that the duty was breached and that the breach of the duty was the proximate cause of his accident. McMillan v. Selman, 193 W.Va. 301, 303 (1995). Under West Virginia law a property owner owes a social guest such as plaintiff a duty to exercise reasonable care under the circumstances. Mallet, 206 W. Va. at 156. Although plaintiff claims defendant was negligent and breached his duty of care, he has not identified with any clarity how defendant allegedly breached his duty. The best this Court can decipher is that plaintiff argues: (1) defendant should have better secured his ladder; (2) defendant should not have permitted plaintiff to cut down a branch with an electric chainsaw while high on a ladder; and (3) defendant should not have permitted plaintiff to cut a branch while the ladder plaintiff was standing on was resting on the branch to be cut.

The Court rejects plaintiff's arguments because it flies in the face of well-established West Virginia law. In West Virginia a property owner is not liable for injuries that result from dangers that are "obvious, reasonably apparent, or as well known to the person injured as they are to the owner." Eichelberger v. United States, No. C. A. 1-04-cv-45, 2006 WL 533399, at *3 (N.D. W.

11

Va. March 3, 2006)(quoting Burdette v. Burdette, 147 W.Va. 313, 318 (1962)(citation omitted)). A property owner is also "under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." Id. This Court finds that there is no fact question that all of the dangers identified by plaintiff were obvious and were as well known to plaintiff as they were to defendant. When plaintiff climbed defendant's ladder he knew exactly what he was doing. Plaintiff knew his ladder was not tied down and that defendant was merely holding it at the bottom. Plaintiff also knew his ladder was leaning against the same branch he was cutting. In addition, it was as apparent to plaintiff as it was to defendant that there was a possibility the branch plaintiff was cutting could fall and knock his ladder loose. In addition, plaintiff was under no compulsion to do what he did. Plaintiff could have easily refused to cut defendant's tree with no adverse consequences. Under these circumstances no reasonable jury could find that plaintiff's decision to climb defendant's ladder and cut a branch with an electric chainsaw with defendant holding the ladder was anything other than a voluntary decision to assume the obvious and known risks attendant to the activity. In accord Robertson v. Morris, 209 W.Va. 288, 292 (2001)("it is common knowledge that the cutting of any tree entails hazards"). Based upon applicable West Virginia precedent defendant was under no duty to prevent plaintiff from knowingly and voluntarily undertaking an activity involving significant risks when the risks and dangers

12

attendant to the activity were as well known to plaintiff as they were to defendant.

West Virginia courts have consistently ruled for defendants in circumstances analogous to this case. In Eichelberger, supra, the plaintiff fell on a ramp while exiting defendant's premises. Plaintiff argued, in part, that defendant was negligent because the ramp did not have handrails. After the Magistrate Judge recommended that summary judgment be entered for the defendant, the recommendation was affirmed by the District Judge. See Eichelberger, 2006 WL 533399, at *1. The Court agreed with the Magistrate Judge that the absence of handrails was an obvious condition that was known to the plaintiff prior to his fall. Id. at *5. The Eichelberger decision relied on Burdette, supra, which is also instructive. In Burdette the defendant owned a car repair shop and garage. In connection with the business defendant kept supplies in an attic or second story of his building. Access to this area was by means of a 14-foot wooden ladder that rested against and was tied to a beam by a small piece of rope. Plaintiff's accident occurred when he fell off the ladder while he and defendant were looking for a rear light. After a jury rendered a verdict for plaintiff, defendant appealed. On appeal, the West Virginia Supreme Court reversed. The Court reasoned, in part, that defendant was not liable because the danger of climbing the defendant's ladder was as equally obvious and known to the plaintiff as it was to the defendant. Burdette, 147 W.Va. at 319. The same situation exists in this case. Plaintiff was just as

13

aware of all dangers and risks attendant to his activity as was defendant.

West Virginia decisions supporting defendant are not limited to those that were issued before the Mallet decision abolished the distinction between non-trespassing licensees and invitees. In addition to Eichelberger, the decision in Harris v. United States, C.A. No. 1:05cv17, 2006 WL 2583435 (N.D.W.Va. Sept. 6, 2006) is instructive. In that case plaintiff was a federal prisoner who fell from his top bunk bed, hit his head between a metal locker and his bed post and then fell to the floor. The plaintiff argued the defendant was negligent because of the placement of his locker. After the plaintiff appealed the Magistrate Judge's decision granting summary judgment to defendant, the District Judge affirmed the decision. The Court ruled, in part, that because the placement of the lockers was open and obvious, defendant was not liable to plaintiff. Id. at *5. See also Hawkins v. U.S. Sports Ass'n, Inc., 219 W.Va. 275, 280 (2006)(citing Eichelberger with approval); Workman v. Wal-Mart Stores East, L.P., C.A. No. 2:04-1257, 2007 WL 5415489, at *3 (S.D.W.Va. Aug. 27, 2007)(citation omitted)(no owner/occupant liability exists for dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner/occupant).

Plaintiff argues that a jury should evaluate the foreseeability of his accident. However, plaintiff's argument must be rejected. Under applicable West Virginia precedent a plaintiff cannot recover for an accident caused by an open and obvious

14

condition that is voluntarily encountered. Even plaintiff agrees that the danger associated with his actions was "evident." See Brief at 8.

Defendant's summary judgment motion should also be granted because plaintiff has presented no evidence that defendant breached any duty or that defendant's alleged negligence was the proximate cause of his accident. It is well established that a landowner is not an insurer of his or her premises. Id., 219 W.Va. at 278. The mere happening of an accident is not sufficient to establish liability. Burdette, supra, 147 W.Va. at 321. There is no evidence that defendant's ladder and chainsaw were defective. Furthermore, no evidence exists from which a jury could infer that defendant negligently held his ladder before plaintiff fell. Also, no evidence exists to dispute defendant's testimony that his ladder fell because the branch plaintiff cut hit his ladder and knocked it over. Plaintiff simply does not know why the ladder fell. As plaintiff testified, "he's down there and I'm up here." Like Burdette, the evidence "shows that the fall which resulted in ... [plaintiff's] injuries was due to the manner in which ... [plaintiff] used the ladder...." 147 W.Va. at 319. In Robertson, supra, the court also granted summary judgment to an owner on whose property plaintiff fell from a tree he was cutting. Like this case, the court concluded "the immediate cause of the ... injury was ... [plaintiff's] failure to use safety equipment and procedures in tackling the work involved in cutting the tree." 209 W. Va. at 292. The holdings in Burdette and Robertson are

15

consistent with this Court's ruling that defendants' motion for summary judgment should be granted.

Another relevant case is Senkus v. Moore, 207 W.Va. 659 (2000). In that case defendant operated a veterinary hospital. After plaintiff exited an examination room he tripped over the corner of a scale placed on the floor in a corner of the hallway near the room he exited. There was no fact question that the scale was in plain view. Plaintiff argued defendant was negligent in the placement of the scale. However, the Supreme Court affirmed the summary judgment granted to the defendant and held there was no evidence from which to infer defendant breached any duty or was negligent. The court reasoned that the alleged danger, the placement of the scale, was known to the plaintiff and the uncontroverted evidence showed that the accident happened because the plaintiff failed to watch where she was going. 207 W.Va. at 662. Similarly, in this case the evidence plainly demonstrates that plaintiff's accident occurred because he failed to take any precautions in the face of obvious dangers and risks.

**Conclusion**

For all the foregoing reasons, the Court finds that there is no genuine issue of material fact that judgment should be awarded to the defendant as a matter of law. Therefore, defendants' Motion for Summary Judgment will be granted. An appropriate Order consistent with this Opinion will be entered.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: September 22, 2008